Robinson, J.,
¶ 37. concurring. I have no reason to question the majority’s conclusion that the trial court used the term “sodomy” here in good faith, believing that term to be an appropriate and accurate way to describe the conduct at issue, rather than as an expression of the court’s moral condemnation of certain kinds of sex acts, or as an indication of the court’s improper bias on the basis of sexual orientation. I write this separate concurrence to stress that the trial court’s characterization of the sexual assaults *53 in this case as “sodomy,” and its emphasis on that characterization in describing the horror of what happened, although not reversible error, added confusion rather than clarity to the trial court’s analysis, was totally inappropriate, and had no place in a sentencing hearing.
¶ 38. The trial court’s description of defendant’s conduct as “sodomy” created unnecessary confusion because, as the trial court’s own reasoning reflects, the term “sodomy” is an umbrella term that encompasses a varying range of acts, including but not limited to the oral sex at issue in this case. If the sentencing court’s objective was to describe the unlawful, nonconsensual sex act that gave rise to the aggravated sexual assault charge in this case with more specificity, as the majority suggests, the court’s terminology did almost nothing to narrow the field. Although the court’s language excluded penile-vulvar contact from the range of acts it was describing, it included every other type of sex act included in the sexual assault statute. See 13 V.S.A. § 3251(a)(1) (“A ‘sexual act’ means conduct between persons consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion, however slight, by any part of a person’s body or any object into the genital or anal opening of another.”). In fact, the court arguably used a term that swept in categories of conduct not even addressed in the sexual assault statute. See Merriam-Webster’s Online Dictionary (Sept. 21, 2015), http://www.merriam-webster.com/dictionary/sodomy [http://perma.cc/CK9G-ZNXT] (defining “sodomy” to include copulation with an animal). If the sentencing court’s goal was to describe what happened in this case, simply referencing the conduct as “oral sex” — rather than describing it as sodomy and then clarifying that the definition of sodomy is broad enough to encompass oral sex — would have provided the clarity and specificity that the court may have been seeking.
¶ 39. The court’s terminology was inappropriate because the common feature characterizing the various sex acts sometimes included in the definition of sodomy is that they were, at common law, considered “unnatural,” “perverted,” or “crimes against nature.” For example, Black’s Law Dictionary, defines “sodomy” as follows:
1. Oral or anal copulation between humans, esp. those of the same sex. 2. Oral or anal copulation between a *54 human and an animal; bestiality. — Also termed buggery; crime against nature; abominable and detestable crime against nature; unnatural offense; unspeakable crime; (archaically) sodomitry.
Black’s Law Dictionary 1606 (10th ed. 2014). Whatever the court’s intentions may have been, the thrust of its using the term “sodomy” was that defendant engaged in sex acts with the victim that were “abominable and detestable crime[s] against nature.” Id. The defining attribute of “sodomy” is the social condemnation associated with the sexual acts described by that term, so it’s understandable that defendant would perceive the court’s comments as an expression of social condemnation.
¶ 40. Our modern sexual assault statute makes no distinction between nonconsensual sex acts of the sort historically deemed “unnatural” or deviant, and those that were not. See 13 V.S.A. § 3251(a). The sentencing court’s invocation of the concept of “sodomy” drew a distinction between the sexual act at issue here (and every other act included in the definition of “sexual act” in the sexual assault statute except for conduct consisting of contact between the penis and the vulva) and penile-vulvar contact that is not supported by the statute.
¶ 41. What is shocking about the crime here is defendant’s grooming of a young victim over a period of time, and the nonconsensual nature of the sexual acts — not the fact that they did not involve penile-vulvar contact. By using a term that is defined by an archaic moral judgment about which consensual sexual behaviors are normal and acceptable, and which are crimes against nature, the trial court may have inadvertently given the impression that it was relying on considerations that are not supported in the statute, and are constitutionally problematic. See Lawrence v. Texas, 539 U.S. 558, 571 (2003) (“The issue is whether the majority may use the power of the State to enforce these views on the whole society through operation of the criminal law. ‘Our obligation is to define the liberty of all, not to mandate our own moral code.’ ” (quoting Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 850 (1992))).
¶ 42. In order to validate the trial court’s word choice, the State and majority point to the fact that statutes on the books in some other states use the term “sodomy.” This argument misses the point. First, some of the statutes referenced by the majority are, *55 at least in part, unconstitutional and unenforceable in light of the United States Supreme Court’s decision in Lawrence. 539 U.S. at 578; see, e.g., Ga. Code Ann. § 16-6-2(a)(1) (“A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another.”). Moreover, some state statutory regimes still distinguish between rape — forcible sexual intercourse involving penile-vulvar contact — and forcible “deviate sexual intercourse” — sexual assault involving other types of oral-genital or anal-genital contact. See, e.g., Or. Rev. Stat. Ann. §§ 163.305, 163.355, 163.365, 163.375, 163.385, 163.395, 163.405 (defining and regulating nonconsensual sex involving heterosexual intercourse separate from nonconsensual sex involving the other kinds of sexual acts included in Vermont’s sexual assault statute). As noted above, the Vermont Legislature has rejected this distinction, and it has no footing in Vermont law. See Baker v. State, 170 Vt. 194, 232, 744 A.2d 864, 891 (1999) (Dooley, J., concurring) (“Although Vermont, like all states, once criminalized sodomy, and had a ‘fellation’ law, it repealed this law in 1977 and does not now prohibit, or otherwise restrict, homosexual conduct between adults, except on the same terms that it restricts heterosexual conduct.” (citations omitted)).
¶ 43. The reason the trial court’s statement had no place in a sentencing hearing is that it reasonably could be construed to reflect a bias against lesbian and gay people. So far, my discussion has focused on the impropriety of singling out nonconsensual sexual acts not involving penile-vulvar contact for special condemnation under our sexual assault statute, without regard to whether the offender and victim are of the same sex. But the issue here isn’t just that the sentencing court’s language suggested a disapproval of nonprocreative sex acts. Although at common law “sodomy” described a class of sex acts without regard to the genders of the participants, in contemporary American society, the link between the epithet “sodomite” and homosexuality is undeniable. The common understanding that “sodomy” is synonymous with same-sex relations is reflected in our everyday conversation, news stories, dictionary definitions, and even United States Supreme Court opinions. See, e.g., H. Branson-Potts, Judge strikes down, proposed ‘Sodomite Suppression Act’ calling for killing of gays, L.A. Times (June 23, 2015, 4:21 PM) http://www.latimes.com/ localAanowAa-me-ln-antigay-sodomite-suppression-act-struck-down- *56 20150623-story.html [http://perma.cc/38GH-B33Q]; Merriam-Webster’s Online Dictionary (Sept. 24, 2015), http://www.merriam-webster.com/dictionary/sodomy [http://perma.cc/D83E-9WC6] (defining “sodomy” as “anal or oral copulation with a member of the same or opposite sex”); Lawrence, 539 U.S. at 570 (“The longstanding criminal prohibition of homosexual sodomy upon which the Bowers decision placed such reliance is as consistent with a general condemnation of nonprocreative sex as it is with an established tradition of prosecuting acts because of their homosexual character.” (citing Bowers v. Hardwick, 478 U.S. 186 (1986))). When is the last time a heterosexual woman was publicly condemned as a “sodomite” for having oral sex with her boyfriend or husband?
¶ 44. Although I am confident that the sentencing court here did not intend to draw such a distinction, the trial court’s gratuitous description of his conduct as “sodomizing” the victim could be interpreted as reflecting a view that the same-sex nature of the sexual assault in this case made it particularly offensive. I am quite sure that if defendant had engaged in the same grooming conduct with an adolescent girl, and then repeatedly had nonconsensual vaginal intercourse with her, the sentencing court would have been equally appalled by his behavior. But defendant is not unreasonable in asking whether the sentencing court’s emphasis that he “repeatedly sodomized” the victim suggests that the court is particularly disgusted by same-sex sexual assaults — a suggestion that has no place in Vermont’s courts.
¶ 45. I am authorized to say that Justice Skoglund joins in this concurrence.